CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

SEP 19 2005

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| RICHARD L. RIGGLEMAN, | ) |
| | ) Civil Action No. 5:04CV00110 |
| Plaintiff, | ) |
| | ) |
| v. | ) **MEMORANDUM OPINION** |
| | ) |
| JO ANNE B. BARNHART, | ) |
| Commissioner of Social Security, | ) By: Honorable Glen E. Conrad |
| | ) United States District Judge |
| Defendant. | ) |

Plaintiff has filed this action challenging the final decision of the Commissioner of Social Security denying plaintiff's claims for disability insurance benefits and supplemental security income benefits under the Social Security Act, as amended, 42 U.S.C. §§ 416(i) and 423, and 42 U.S.C. § 1381 et seq., respectively. Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). As reflected by the memoranda and argument submitted by the parties, the issues now before the court are whether the Commissioner's final decision is supported by substantial evidence, or whether there is "good cause" to necessitate remanding the case to the Commissioner for further consideration. See 42 U.S.C. § 405(g).

The plaintiff, Richard L. Riggleman, was born on April 26, 1957 and eventually reached the eighth grade in school. Mr. Riggleman has worked as a heavy equipment operator, crane operator, maintenance laborer, and motel cleaner. The record suggests that he last worked on a regular and sustained basis in 1999. On July 13, 2000, Mr. Riggleman filed applications for disability insurance benefits and supplemental security income benefits. Plaintiff alleged that he became disabled for all forms of substantial gainful employment on October 15, 1999 due to asthma, sleep apnea, heart attack, shortness of breath, and bad headaches. Plaintiff now maintains that he has remained

disabled to the present time. As to his claim for disability insurance benefits, the record reveals that Mr. Riggleman met the insured status requirements of the Act at all relevant times covered by the final decision of the Commissioner. See, generally, 42 U.S.C. §§ 414 and 423.

Mr. Riggleman's claims were denied upon initial consideration and reconsideration. He then requested and received a de novo hearing and review before an Administrative Law Judge. In an opinion dated March 18, 2002, the Law Judge also ruled that Mr. Riggleman was not disabled. The Law Judge found that plaintiff suffered from heart, lung, and back problems. Despite these impairments, the Law Judge found that plaintiff did not suffer from a "severe" impairment within the meaning of 20 C.F.R. §§ 404.1521 and 416.921. Accordingly, the Law Judge ultimately concluded that Mr. Riggleman was not disabled and that he was not entitled to benefits under either federal program. See 20 C.F.R. §§ 404.1520(c) and 416.920(c). Upon plaintiff's appeal of the adverse decision, the Social Security Administration's Appeals Council remanded the case for further consideration. The Appeals Council noted that the Administrative Law Judge had not explicitly considered reports from plaintiff's treating physicians, which indicated the existence of at least a "severe" impairment.

Following remand, the case was assigned to a second Administrative Law Judge for another hearing and decision. The second Law Judge rendered an opinion on January 16, 2004. The second Law Judge found that Mr. Riggleman suffers from residuals of a heart attack, headaches, sleep apnea, and back problems. The Law Judge found that Mr. Riggleman experiences "severe" impairments. Indeed, because of his physical problems, the Law Judge held that plaintiff is disabled for all of his past relevant work roles. Nevertheless, the Law Judge found that Mr. Riggleman retains sufficient functional capacity for sedentary work activity which permits a sit or stand option. Given

2

such a residual functional capacity, and after considering plaintiff's age, education and prior work experience, as well as testimony from a vocational expert, the Law Judge determined that plaintiff retains sufficient functional capacity to perform several specific sedentary work roles which exist in significant number in the national economy. Accordingly, the Law Judge ultimately concluded that Mr. Riggleman is not disabled, and that he is not entitled to disability insurance benefits or supplemental security income benefits. See 20 C.F.R. §§ 404.1520(f) and 416.920(f). The Social Security Administration's Appeals Council adopted the second Law Judge's opinion as the final decision of the Commissioner. Having now exhausted all available administrative remedies, Mr. Riggleman has appealed to this court.

While plaintiff may be disabled for certain forms of employment, the crucial factual determination is whether plaintiff was disabled for all forms of substantial gainful employment. See 42 U.S.C. §§ 423(d)(2) and 1382c(a). There are four elements of proof which must be considered in making such an analysis. These elements are summarized as follows: (1) objective medical facts and clinical findings; (2) the opinions and conclusions of treating physicians; (3) subjective evidence of physical manifestations of impairments, as described through a claimant's testimony; and (4) the claimant's education, vocational history, residual skills, and age. Vitek v. Finch, 438 F.2d 1157, 1159-60 (4th Cir. 1971); Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962).

After a review of the record in this case, the court is unable to conclude that the Commissioner's final decision is supported by substantial evidence. While the medical reports of record are in sharp conflict, the court finds that the evidence supports the Law Judge's finding that Mr. Riggleman retains sufficient physical capacity to perform a limited range of sedentary exertion. However, the court does not believe that the Administrative Law Judge considered all of plaintiff's

3

exertional limitations in questioning the vocational expert as to the existence of particular, alternate work roles which Mr. Riggleman could be expected to perform. Specifically, the court does not believe that the vocational expert was asked to consider plaintiff's weakness and reduced range of motion in the upper left extremity. The court finds "good cause" for remand of this case to the Commissioner for further development and consideration.

Despite the cogent arguments of plaintiff's counsel, the court does not believe that the medical records, standing alone, support a determination of total disability. Stated succinctly, two treating physicians, Dr. Daniel Perry and Dr. Bart Balint, have both produced multiple reports which suggest that Mr. Riggleman's combination of impairments is totally disabling in severity. It is true that Dr. Perry has treated plaintiff on over forty occasions, as documented in the administrative record. Dr. Balint, a pain management specialist, has performed several epidural injections in an attempt to control Mr. Riggleman's complaints of severe and debilitating lower back and leg discomfort.[1]

The difficulty in plaintiff's argument is that all of the objective studies performed in connection with treatment of plaintiff's symptoms fail to document the existence of any condition which could reasonably be expected to result in total disability for all forms of work. On recommendation from Dr. Perry, Mr. Riggleman has been evaluated on several occasions, and by several different medical departments, at the University of Virginia Medical Center. A lumbar myeogram and CT scan have documented no significant mechanical defects in the lower back other than developmental spinal stenosis. While Mr. Riggleman experienced a mild heart attack in the late

---

[1] The court does observe, however, that Dr. Balint's later reports do not support a finding of total disability to the same extent as to certain of his earlier medical evaluations.

4

1990s, more recent cardiovascular work-ups have revealed no significant heart problems. In short, many of the problems contemplated by Dr. Perry and Dr. Balint simply have not been documented.

The court also notes that the Commissioner's findings of residual functional capacity for a limited range of sedentary exertion find support in a consultative evaluation performed by Dr. William Barrish on June 21, 2003. In the court's view, Dr. Barrish's report constitutes a fair and comprehensive evaluation of Mr. Riggleman's medical history as well as plaintiff's residual functional capacity. Dr. Barrish listed the following diagnoses:

1. Left shoulder pain with history of rotator cuff tear and osteoarthritis. The patient most likely needs further treatment including surgery.
2. Low back pain with degenerative disc disease and lumbar stenosis. The patient has undergone rather extensive conservative treatment with ongoing pain.
3. Respiratory disorder with COPD.
4. Obstructive sleep apnea syndrome.
5. Bilateral knee pain possibly related to osteoarthritis. I would recommend correlation with x-ray examination.
6. Coronary artery disease status post myocardial infarction with rare episodes of angina.
7. Hypertension which is controlled with medications.
8. Obesity.

(TR 444). Dr. Barrish went on to offer the following assessment as to plaintiff's residual functional capacity:

> At this time, I feel the patient should avoid heavy physical exertion secondary to his cardiac and respiratory status. Range of motion is limited in the lumbar spine and left shoulder. Strength is limited in the left supraspinatus. At this time, I feel the patient could sit, stand and walk six to eight hours per day; however, he would need frequent allowance for rest breaks and position changes. Lifting and carrying can be done with 10 pounds frequently and 20 pounds occasionally with limitations secondary to the findings in the lumbar spine and left shoulder. Grasping and handling could be done occasionally with some decrease in the left side secondary to residual symptoms of carpal tunnel syndrome and ulnar neuropathy. Bending, crawling, crouching, and stooping should be avoided secondary to the findings in his low back, bilateral knees as well as secondary to obesity. Gait is slow with no

5

assistive device. The claimant is able to drive short distances. Vision is within normal limits with corrective lenses. Hearing and cognition are both within normal limits.

(TR 444). In a memorandum in support of her motion for summary judgment, the Commissioner also relies heavily on the report and evaluation of Dr. Barrish.

Unfortunately, the vocational expert was not asked to consider all of the limitations described by Dr. Barrish. Dr. Earl Glosser appeared at the administrative hearing as the vocational expert. In responding to inquiries concerning the existence of transferable work skills, Dr. Glosser noted that "it would depend on the ability use two good hands." (TR 546). The transcript of the hearing goes on to document the following exchange between the vocational expert and the Administrative Law Judge:

| | |
|---|---|
| Q [ALJ]: | Now, given this gentleman's age, his educational background and his prior work, what kind of sedentary jobs would there be for somebody like that who would need a sit stand option, hypothetically? |
| A [VE]: | Are you looking at him sir as a, with limited education or with marginal? |
| Q: | Well his testimony is that, well actually we've got his school records here. He went through, he quit in the eighth grade. |
| A: | That would be usually a limited educational background, all right? |
| Q: | All right. |
| A: | The sit stand option is not difficult. It would be the effective use of two hands but not necessary skillfully. It would simply be -- |
| Q: | I didn't say anything about hands. |

(TR 547)

In response to the Law Judge's question, Dr. Glosser identified jobs as an inspector or assembler. (TR 548). Thus, while Dr. Glosser seemingly anticipated questioning as to the effect of

6

limited <u>bilateral</u> capacity, such a question was not posed, either by the Administrative Law Judge or plaintiff's attorney.

As previously noted, Dr. Barrish, the consultative physician who offered what is seemingly the most comprehensive evaluation of plaintiff's combination of impairments, specifically noted limitations in lifting and carrying based on impairment in the left shoulder, as well as decrease in the capacity for grasping and handling. It would seem to the court that impediments in a worker's capacity for bilateral grasping and handling would impact performance as a production line inspector or assembler. The court believes that the vocational expert implied as much in his attempt to respond to a question that was not asked. Based on Dr. Barrish's assessment of plaintiff's residual functional capacity, the court is unable to conclude that the vocational expert was asked to consider all of plaintiff's work-related limitations.[2]

In <u>Walker v. Bowen</u>, 889 F.2d 47, 50 (4th Cir. 1989), the United States Court of Appeals for the Fourth Circuit commented as follows:

> The purpose of bringing in a vocational expert is to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform. In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments. (citations omitted).

Inasmuch as the hypothetical question to the vocational expert in this case did not include all of the physical limitations documented in the consultative report completed at the behest of the

---

[2] The court recognizes that Dr. Barrish considered plaintiff's left shoulder pain to be associated with a history of rotator cuff tear. It does not appear that Dr. Barrish was provided a copy of an MRI report which had been completed several months earlier, and which indicated that Mr. Riggleman has experienced no rotator cuff tear. (TR 463). On the other hand, Dr. Barrish attributed the limitation in plaintiff's capacity for grasping and handling to residual symptoms of carpel tunnel syndrome and ulnar neuropathy, conditions for which Mr. Riggleman had been treated by surgery in 1998. All in all, the court believes that Dr. Barrish's report supports the proposition that plaintiff experiences some impairment in function in the left upper extremity which is vocationally significant.

Commissioner, the court finds that the Law Judge's reliance on the vocational expert's testimony in finding residual functional capacity for alternate work roles is not supported by substantial evidence. The court believes that it is necessary to remand this case so that proper and comprehensive hypothetical questions can be put to a qualified vocational expert. It can then be determined whether plaintiff can perform alternate work roles existing at the sedentary level, given his particular combination of exertional and nonexertional limitations, as well as his age, education, and work experience. See, generally, 20 C.F.R. §§ 404.1520(f) and 416.920(f).

For the reasons stated, the court finds that plaintiff has established "good cause" for remand of his case to the Commissioner for further development and consideration. See 42 U.S.C. § 405(g). An appropriate order of remand will be entered this day.

The Clerk is directed to send certified copies of this Memorandum Opinion to all counsel of record.

DATED: This 19th day of September, 2005.

                                        United States District Judge

8

Case 5:04-cv-00110-GEC   Document 14   Filed 09/19/05   Page 8 of 8   Pageid#: 60